| 35 | 265 |
| 48 | 562 |
| 35 | 265 |
| 52 | 438 |

## The Union Pacific Railway Company v. G. F. Beatty.

RAILWAY ACCIDENT; *Physician Employed without Authority.* Where a railway passenger train is derailed and some of the passengers are injured by inevitable accident, no obligation rests upon the company to furnish medical care and attention to the injured passengers, and the company cannot be made liable for such care and attention, by the contract of the division superintendent, unless authority has been given him to commit it to such liability; and where a division superintendent employs a physician to attend upon passengers so injured, and the company denies his authority and contests its liability under the employment, it is error for the court to instruct the jury that the division superintendent will be presumed to have such authority until the contrary appears.

### *Error from Clay District Court.*

ACTION by *Beatty* against *The Railway Company,* to recover for services as a physician and surgeon and for medicines alleged to have been rendered and furnished upon the employment of the defendant company. Trial at the May Term, 1884, and judgment for plaintiff for $250 and costs. *The Company* brings the case here. The material facts are stated in the opinion.

*J. P. Usher,* for plaintiff in error.

*J. S. Walker,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This proceeding is brought to reverse a judgment obtained against the Union Pacific Railway Company by Dr. G. F. Beatty for his services as a physician and surgeon, and for medicines alleged to have been rendered and furnished upon the employment of the railway company. It appears that on June 11, 1883, a passenger train of the railway company was derailed at a point on the Kansas Central division of the road, between Miltonvale and Clay Center, and that a number of the employés and passengers on the train were injured. At the instance of the station agent and also of the locomotive engineer of the wrecked train, the plaintiff went to the point where the accident occurred, and there found eight persons suffering from injuries received in consequence of the accident, two of whom were the employés of the company. He states that six of the cases proved to be of but minor importance, while the injuries received by three of the passengers were of a more serious nature. The three last named were taken to Miltonvale, where the doctor continued to give them medical and surgical care and attention for ten days thereafter. It further appears that while the plaintiff and the station agent were on their way to the scene of the accident, the station agent was injured by the bursting of a torpedo which had been placed on the track, and the treatment of this injury was also included by the plaintiff in his charge against the company. The plaintiff offered proof tending to show that the division superintendent of the railway company was notified of the accident and of the fact that the doctor was in attendance upon the persons who had been injured, and that he directed the station agent to take the injured persons to Miltonvale, and to continue the plaintiff as physician and surgeon in charge of them. He also attempted to prove that his employment by the station agent and engineer was subsequently ratified by the division superintendent. That the plaintiff was requested by the station agent and engineer to attend and take charge of the injured persons seems not to

be questioned, but the division superintendent denied that he ever authorized them to employ the plaintiff, or in any way ratified his employment. The plaintiff presented a bill for his services for $250, which was referred to the general superintendent of the company, who rejected the claim, and in a letter to the plaintiff gave his reasons as follows:

"Referring to your claim of $250 for services to passengers injured by train blowing off track on Kansas Central division on night of June 11, we do not consider that the company was responsible or in any fault for the accident, and as you were not employed by the railway company to attend the injured passengers, your claim is respectfully declined."

The plaintiff recovered for his services to the passengers and employés the full amount of his claim.

At the trial in the district court, as well as here, the plaintiff below relied upon an employment by the division superintendent, and contended that that officer had authority by virtue of his office to bind the company for the medical and surgical service which he had rendered. The principal question in the case is in regard to the authority of the division superintendent in this respect. The court below, in the trial of the cause, proceeded upon the theory that it was within the general scope of the employment of the division superintendent to contract in behalf of the company for such services as were rendered by the plaintiff.

Accordingly, the jury were instructed that the division superintendent would be *presumed* to have authority to employ the doctor and to bind the company for the medical care and protection which he gave to the injured passengers and employés, until the contrary was made to appear. This was error. To support this position, the case of *Pacific Rld. Co. v. Thomas*, 19 Kas. 256, is relied on. The position would be correct, and the authority applicable, if the alleged employment had been made for the treatment of injured employés only, but the greater part of the claim was for the treatment of passengers. In the case cited, it was held that the division superintendent will be presumed, in the ab-

<small>Erroneous instruction.</small>

sence of anything to the contrary, to have authority to employ a physician and surgeon to attend an *employé* who has·been injured while in the service of the company, and the case of *A. & P. Rld. Co. v. Reisner*, 18 Kas. 458, which is also cited, goes no farther. In none of the cases to which we are referred is it held that there is any implied authority in the division or general superintendent to furnish entertainment for or to employ physicians to attend upon passengers who have become sick or have been injured without the fault of the company. There is no legal obligation resting upon the company to provide medical or surgical care for those who have been injured in its service, but the grounds upon which the authority of the superintendent to make such contracts is inferred is that it is a reasonable thing for the company to provide for the care and cure of persons who are engaged in the hazardous employment of railroading. This risk is incurred by them while they are devoting their energies and labor to promote the interest of the company, and they are generally dependent upon the daily labor thus given for the support of themselves and families. Again, they are skilled in the particular branch of the service in which they are engaged, and their injury, to some extent, interferes with the business of the company, and retards the operation of the road. The company is therefore interested in the speedy cure of employés who have been disabled, and in their early resumption of the duties for which they have been specially trained. (*T. W. & W. Rld. Co. v. Roderiques*, 47 Ill. 188; *T. W. & W. Rld. Co. v. Prince*, 50 id. 26.)

These considerations are wanting in the case of passengers who have been injured by unavoidable accident. So far as this case is concerned, we must treat and dispose of it upon the theory that the derailment of the train was purely accidental. During the trial the defendant company offered to prove that the train was thrown off the track and wrecked, and the injuries to the passengers and employés were inflicted by a tornado of wind, which was so violent and sudden that it was absolutely impossible for the company, in the exercise of the greatest possible care, to resist or withstand it, and there-

fore that it was not the fault of the defendant that the train was derailed. This testimony was erroneously excluded by the court, and there was no other given concerning the cause of the accident. We must therefore assume that the injury of the passengers resulted from unavoidable accident, and not from any negligence or fault of the company. Probably there are but few instances of injury to passengers riding upon railroad trains where negligence or fault cannot be traced to the railroad company, but in cases where there is no such negligence no responsibility can attach to the company, and no recovery can be had for the injuries sustained. It does not insure the lives or health of those who take passage upon its trains. The most that can be required is that it shall use the highest care in the conveyance of the passenger to his destination. There is no more obligation resting upon the company to provide medical care and treatment for passengers unavoidably injured, than for passengers who become sick during the journey over the road. In either case the full measure of the duty of the company is to carry the passenger in the condition in which he may be found to his destination. Beyond this the company has no interest in the passenger, and therefore has no such concern for his health and soundness that it has in its employés who may be injured while in its service. To furnish medical care and treatment for passengers in such cases would be a mere gratuity, and the funds of the corporation cannot be thus dispensed by the division superintendent without authority from the board of directors.

In *Cox v. Midland Counties Railway Co.*, 3 Welsb. H. & G. 268, the station-master of the railway company at Birmingham, who acted there as chief officer of the passenger and other departments, employed a surgeon to perform a surgical operation upon a passenger injured by a train of the railway company, and the company contested its liability for the service on the ground that its servants had no authority to bind them by contracts of that description, and the court held that there was no liability against the company therefor, because the power to enter into the contracts was not incident either to

the employment of the station-master or of the superintendent of the road. Perhaps it is true that in certain emergencies the superintendents of railroads are authorized to provide medical and surgical care for injured passengers, and to bind the railroad companies for the payment of such services, and it is probably well that such provision should be made; but in those cases it will not be difficult to show the authorization, or a recognized custom or usage of the company to furnish medical attendance to passengers injured by inevitable accident. In the absence of testimony of express authority from the company, or of a custom or usage from which authority might be implied, the company cannot be bound by such contracts made by the superintendent or his subordinates. If the injury to the passengers resulted from the negligence of the carrier, other considerations would enter into the case, which might warrant the implication of authority in the superintendent or some general agent of the company to provide medical attendance and entertainment for them; but whatever might be the rule in that case, we are of the opinion that there is no such presumption of authority in the division superintendent where the passengers are injured through no fault of the company.

It necessarily follows that there was error in the charge of the court for which a new trial must be given; and as the other questions presented by the plaintiff in error may not again arise, it becomes unnecessary to notice them here. The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.