CAROLINE CLARK, as *Administratrix of the estate of Wm. D. Clark, deceased,* v. THE MISSOURI PACIFIC RAILWAY COMPANY.

1. RAILROAD EMPLOYÉ — *Risks Assumed.* Where the servant has equal knowledge with the master of the construction and condition of the road-bed of a railroad company, and knows all of the dangers and hazards incident to his work thereon, such servant assumes all the risks and hazards of his employment.

2. ———— *Company, not Negligent.* In constructing a branch of one of the principal railroad lines of the state, dirt ballast was used between the tracks of the road, the dirt or filling not extending to the end of the ties, but the road-bed was raised at the center, sloping downward toward the end of the ties, leaving no dirt under them. A head brakeman, familiar with the construction of the road-bed, embankment, and track, and having control of the movement of the train, just after dark, when the road-bed was covered with snow which had fallen after some sleet, directed the engineer to back the train up, and, while the train was moving slowly backward, he stepped in between two cars to uncouple them, and slipped and fell with his knee across the rail. In this condition he was run over and his knee crushed. Subsequently, his injured leg was amputated, and soon afterward he died. *Held,* Under these circumstances, no negligence can be imputed to the railroad company.

3. ———— *Pleading and Proof.* A trial court commits no error in refusing evidence outside of the allegations of the pleadings, and not within any of the issues framed thereby.

*Error from Cloud District Court.*

ON March 22, 1887, *Caroline Clark*, as administratrix of the estate of William D. Clark, deceased, commenced her action in the district court of Cloud county, to recover $10,-000 as damages by the reason of the death of William D. Clark. It was alleged in the petition that William D. Clark was, on December 12, 1885, in the service of the defendant as a brakeman on one of its trains running from Burr Oak, in Jewell county, to Jamestown, in Cloud county, on the Jewell branch of the Central Branch Union Pacific railroad, controlled and operated by the defendant, and that he was injured at an intermediate station called "Randall," on the branch, and that he died on December 14, 1885. The circumstances of the injury are alleged in the petition, as follows:

"That while at said Randall station part of said train of cars was switched upon the side-track of said station, and the said Wm. D. Clark, as a part of his duties as said brakeman, was then and there required to and did then and there couple and uncouple certain cars of said train; that while so engaged said train of cars, to wit, that part of said train of cars that had been switched upon said side-track, was pulled off of said side-track upon the main track of said road and east of the east end of said side-track, and the said Wm. D. Clark was then and there, on said main track, required to continue to do and perform, and did do and attempt to do the work of coupling and uncoupling the cars of said train; that at the place on said main track where said coupling and uncoupling were required to be done the road-bed, embankment and track, through the negligence and want of care of said defendant, were in a defective condition and badly out of repair, making it unsafe and dangerous for any one to do or attempt to do the work of coupling or uncoupling cars at this place in the manner in which said work had to be done by the said Wm. D. Clark; that he was not familiar with the condition of the road-bed, embankment and track at this point, and did not know, from the condition that said road-bed, embankment and track was then in at said place, that it was dangerous and unsafe to couple or uncouple, or attempt to couple or uncouple, cars at said place, and it being dark at the time, he

was prevented by the darkness from seeing the bad condition the said road-bed, embankment and track at said place was then in, and did not know that it was dangerous and unsafe for him to couple or uncouple, or attempt to couple or uncouple, cars at said place; that notwithstanding the said Wm. D. Clark, at said time and place, was required and obliged, in the line of his duty as such brakeman, to couple and uncouple the cars of said train, and that whilst so engaged, and without any negligence or fault on his part, the said Wm. D. Clark, by reason of the said road-bed, embankment and track being defective and out of repair at said place, while in the act of coupling or uncoupling a car of said train, slipped and fell between and under the cars of defendant's said train, said train being then in motion, and so immediately set in motion by the employés of the said defendant in the control of said train; that by reason of said fall caused by the defective condition of said road-bed, embankment, and track, causing the said Wm. D. Clark to slip and to fall between and under the cars of defendant's train then in motion, the said Wm. D. Clark was then and there sorely and grievously injured, and had his right leg crushed, mangled, and broken, both above and below the knee, and was otherwise injured."

The petition further alleged:

"That after the said injuries were received by the said Wm. D. Clark as aforesaid, and on the same day, the said Wm. D. Clark was removed and conveyed by the said defendant and defendant's employés from said Randall station to the said Jamestown, in Cloud county, Kansas, and by the said defendant there placed in charge, care and control of the physicians and surgeons of said defendant, then in the service and employ of the said Missouri Pacific Railway Company, to be cared for and treated by them for the injuries received; that the said physicians and surgeons of the defendant assumed the charge and care of the said Wm. D. Clark, the injured man, and took the entire control and management of the case, prescribing the treatment for his injuries and giving all directions connected therewith; that said defendant, by reason of the obligations resting and devolving upon it towards the said Wm. D. Clark, its employé, was in duty bound and under obligations to furnish him with competent, careful and skillful physicians and surgeons, having the requisite professional discretion, judgment, knowledge and ability to properly manage and treat

such injuries as the said Wm. D. Clark had received, and to perform in a proper manner and at the proper time and without unnecessary delay and with due skill such surgical operations as the nature of the injuries received by the patient in their charge might require and demand for his benefit and safety; that the nature of the injuries received as aforesaid by the said Wm. D. Clark were such, his right leg being crushed and mangled and the bones broken both above and below the knee, that amputation of the right leg above the knee was necessary and required to be performed without delay in order to save the life of the said Wm. D. Clark, yet the said physicians and surgeons of the said defendant having charge of the injured man, not regarding their duty in the premises, wholly failed and neglected to give to the said Wm. D. Clark the immediate, prompt and proper surgical and medical aid and attention which the serious nature of his injuries required and demanded, but on the contrary carelessly, negligently, heedlessly and causelessly failed and delayed for a long time, to wit, for about the space of 12 or more hours after the said injuries were received by the said Wm. D. Clark, to amputate said injured limb, as was necessary to be done to save the life of the said Wm. D. Clark, and further failed and neglected, during said delay, to render the said Wm. D. Clark the proper and necessary aid and attention and skillful handling required for his condition, but on the contrary administered to him, in large and dangerous quantities, powerful opiates and anæsthetics, prejudicial, hazardous and injurious to give and administer to a person in his condition, and neglected and failed to give him the proper treatment and care."

The cause was heard before the court and a jury. When the plaintiff had rested her case, the defendant demurred to her evidence, which demurrer the court sustained, to which plaintiff excepted, and filed her motion for a new trial, which was overruled, to which she again excepted. Plaintiff brings the case here to have the rulings and decisions of the district court reversed.

*A. D. Wilson,* and *Kennett, Peck & Matson,* for plaintiff in error.

*Waggener, Martin & Orr,* for defendant in error.

42 — 48 KAS.

The opinion of the court was delivered by

HORTON, C. J.: It was charged in the petition that the road-bed, embankment and track of the railroad at Randall station, where Wm. D. Clark, the brakeman, was injured, were at the time dangerous and unsafe for coupling or uncoupling cars. It was also charged that, by reason of the road-bed, embankment and track being defective and out of repair at the place of the injury, while Clark was in the act of uncoupling a car from the train, he slipped and fell between and under the cars; that the train was then in motion, and had been immediately before set in motion by the employés of the railroad company controlling the same. The evidence shows that Clark had been running over the branch line continuously from April, 1884, until the time of the accident—about 20 months. He lived at Jamestown. He made two round trips each day, being a brakeman all the time. On one round trip it was called a passenger train, and the other a mixed train. Part of the time he acted as baggageman on the passenger train, but he helped to do the switching all the time. He was over this track many times, and helped to do the train work in coupling and uncoupling cars at Randall. The road was built in 1879. The evidence shows that the road was ballasted with dirt in the usual manner of such ballast, namely, a ridge of dirt in the middle of the track as high as the top of the ties, and descending each way to the bottom of the ties at the ends, making a descent of six inches in the four feet from the middle of the track to the end of the ties; and this was the condition of the road throughout, except at the terminal stations of Jamestown and Burr Oak, where the filling extended to the end of the ties level with the top.

W. W. Pinkerton, the conductor, and Wm. Tangman, the engineer, were the only railroad men who testified on the trial. Neither was in the service of the company at that time; both were friends of the plaintiff, all living in the same town. They testified that this road was constructed like western roads generally are. Mr. Pinkerton said the

dirt was raised in the center and sloped downward toward the
ends of the ties for the purpose of drainage, and to let the
water out from under the ends of the ties. Mr. Tangman
testified that it was customary on the Central Branch, and on
western roads generally, to fill in the center of the track and
slope outward except at terminal stations, but that on eastern
roads they usually grade them up quite a distance from the
switch targets. The first witness was J. N. Rogers. The
accident occurred on Saturday night, and he was over the
track Sunday forenoon. He testified that at the time of the
accident the ground was covered by snow which had fallen
after some sleet. Two other witnesses testified that there was
snow on the ground, and one of them said there might have
been sleet also. The movements of the train at the time of
the accident were under the direct control of Mr. Clark. He
was the head brakeman. Owens was the rear brakeman.
Mr. Clark was ahead giving signals to the engineer to direct
the movement of these cars. Four or five were attached to
the engine and had been drawn out upon the main track east
of the switch target. It was desired to throw two or three of
these back upon the side track. Mr. Clark turned the switch
so that the cars would go back upon it. Wm. Tangman, the
engineer, referring to Mr. Clark, said: "He gave the signal
to back up." The engineer obeyed the signal and backed
up slowly. As the cars were moving backward, Mr. Clark
stepped in to draw the pin to uncouple the cars that were to
be left on the side-track from the others. He succeeded in
drawing the pin, and then "slipped and fell" with his knee
across the rail, and one truck of the car from which he had
cut the others off, ran over and crushed his knee. The acci-
dent occurred between five and six o'clock in the evening.
The employés of the train had their lanterns lit before they
reached Randall. The leg of Mr. Clark which was injured
was amputated the next morning, but he died the day after.

The evidence showing that dirt ballast was used between
the tracks, that the dirt or filling did not extend to the end
of the ties, and that the road-bed was raised at the center, but

sloped downwards toward the end of the ties, leaving no dirt under the ends, did not establish that the road was improperly constructed, or out of repair. Indeed, the evidence is to the effect that the road or branch was constructed like similar roads or branches are generally constructed in Kansas. But if the road was negligently constructed or kept in repair, the deceased had notice of it.

In *Rush v. Railway Co.*, 36 Kas. 129, Mr. Justice VALENTINE, speaking for the court, said:

"All that can be required of the employer is, that he shall see that the employé is informed with respect to all the dangers and hazards incident to the work; and when this is done, the employé will assume all the risks and hazards of his employment. The employer must always act in good faith toward his employé, and see as far as he reasonably can that the employé does not take any unknown risks or hazards; but where the employer and the employé are equally competent to judge of the risks and hazards, and both have equal knowledge of the surroundings, the employer cannot be culpably negligent as toward the employé, although the work may be dangerous or hazardous, and although it might be made safer by the employer if he should choose to do so."

*1. Railroad employé—risks assumed.*

See, also, *Williams v. Railroad Co.*, 22 Kas. 117; *Railroad Co. v. Plunkett*, 25 id. 188; *Railroad Co. v. Wagner*, 33 id. 660; *Railway Co. v. Weaver*, 35 id. 412.

In the recent case of *Railroad Co. v. Liehe* (Sup. Ct. of Col.), 29 Pac. Rep. 175, it was said:

"The rule is, that when a person engages in the service of another he undertakes, as between himself and his employer, to assume all the ordinary danger and liability of the business upon which he is about to enter, and no more, and if, without fault on his part, he is injured as the result of the negligence of the master, the latter must answer in damages. There are some exceptions to the rule stated, as, for instance, where the servant has equal knowledge with the master of the defects existing in the machinery, the servant will be deemed to have waived his right of action for damages arising from injuries resulting from such defects."

It is not claimed in this case that the railroad company agreed with the deceased to change or add additional ballast

to the road-bed, or that it induced him to remain by any promise to reconstruct or repair the road-bed, embankment or track.    The movement of the train was under the control of the deceased, and by his signal the engineer of the train backed it up slowly; therefore, it cannot be said, when he slipped and fell, he was compelled by his superiors to go into an unsafe and dangerous place to perform work.

2. Company, not negligent.    The accident was a most unfortunate one, but the proof in the case did not fix any liability upon the railroad company.    There was evidence offered tending to show that one end of a rail of the road was slivered up and that some one when crossing over it had caught his pants and fell down. Other witnesses, however, for the plaintiff made an examination and did not notice or find this defect; but if the defect existed, as described, it was some 10 feet from where the deceased slipped and fell, and does not seem to have been in any way the cause of the accident.    The same may be said concerning a broken tie which was found a little east of where Mr. Clark lay, which was broken in the middle, but spikes held the rails to it at each end. (*Railroad Co. v. Wagner*, supra; *Railroad Co. v. Estes*, 37 Kas. 715.)

It is next claimed that the railroad company is liable upon the ground that after the accident the physicians or surgeons of the company were negligent in treating Mr. Clark and in amputating his leg.    Dr. Friday, a regular practicing physician at Randall, was called immediately after the accident. Mr. Clark was taken to his home in Jamestown, and Dr. Friday did everything possible for his relief until he reached that town.    Dr. Hartwell, the local surgeon of the railroad company, then attended, and reported the accident by telegraph to Dr. Holland, the assistant general surgeon, at Atchison — 170 miles away.    Dr. Holland tried to furnish assistance from Clyde and Jewell City, but failed.    Then he wired Dr. Hartwell to call in any physician he chose in Jamestown.    There is evidence tending to show that the amputation might have been made at 10 or 11 o'clock on the night of the accident; it was not made until about 6 o'clock the next morning — 12

or 13 hours after the accident. Four expert physicians and surgeons were then present and assisted in the operation. They were Drs. Friday, Hartwell, Moore and Pigman. The only possible complaint concerning the amputation that can be made is, that it might have been performed six or seven hours before it was. Dr. Moore attended Mr. Clark at the instance of the family, and no objection was made by Dr. Hartwell to the calling of any other physician and surgeon. It does not appear that the railroad company was under any legal obligation to provide medical or surgical care. (*Railway Co. v. Beatty*, 35 Kas. 265.) Upon the facts disclosed, there is no evidence showing or tending to show that the railroad company can be held liable for any results of the medical or surgical treatment of Mr. Clark after the accident, which, with the exception of the delay in making the amputation, according to all the testimony, was proper and skillful.

Complaint is further made that the trial court committed error in refusing to permit plaintiff to show that one of the two cars between which the deceased was injured was taken from another road, and differed from those in general use on the defendant's road, in that it had no hand-holds or guards to hold or support a person in coupling or uncoupling cars. It is also claimed that the court committed error in excluding the evidence offered tending to show that Mr. Clark, in his lifetime, paid to the railroad a certain portion of his salary, in consideration of which the company was to give him medical treatment in case of injury. The evidence rejected was not offered to support any allegation of the petition. If the matters attempted to be established by the rejected evidence were material, they ought to have been alleged in the petition. No issue was tendered by the pleadings thereon. The railroad company had a right to assume that it would not be called upon to meet any negligence or other material matter not pleaded. (*Railroad Co. v. Irwin*, 35 Kas. 286; *Railway Co. v. Fudge*, 39 id. 543.)

3. Pleading and proof.

The judgment of the district court will be affirmed.

All the Justices concurring.