THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. JACOB SCHROEDER.

1. MASTER AND SERVANT — *Dangerous Employment — Assumption of Risk.* While it is the duty of an employer, whether a railroad company or other corporation or person, to make the work of his or its employés as safe as is reasonably practicable, yet when the employé, with full knowledge of all the dangers incident to or connected with the employment as it is conducted, accepts the employment, or, having accepted the same, continues in it with such full knowledge, and without any promise on the part of the employer, or any reason to expect on

the part of the employé, that the employment will be made less dangerous, the employé assumes all the risks and hazards of the employment.

2. ———— Other matters referred to in the opinion.

*Error from Butler District Court.*

THIS was an action brought in the district court of Butler county, on February 24, 1887, by *Jacob Schroeder* against the *Atchison, Topeka & Santa Fé Railroad Company,* to recover damages to the amount of $5,000, for alleged personal injuries. On March 7, 1888, the plaintiff amended his petition, setting forth his cause or causes of action in two counts, the first of which reads as follows:

"The plaintiff, for his cause of action against the defendant, says, that he has been in the employ of various railroad companies for 16 years last past, and that for the last 10 years he had been in the employ of the defendant, the Atchison, Topeka & Santa Fé Railroad Company, in the capacity of section foreman, and that he has during all that time honestly and faithfully performed every duty required of him as such foreman; that he has given to said defendant his entire time, attention, and services, and has at all times obeyed and complied with all the requests and orders emanating from those in authority over him, and says that in the regular discharge of his duty as such foreman in charge of section No. 4CX, on the Florence, El Dorado & Walnut Valley railroad, owned and operated by the defendant, that the defendant furnished the plaintiff with only one man to assist him in keeping said section No. 4CX in order and in good repair, and that he so employed as such foreman and with said help was ordered, by the agents and employés of the defendant railroad company in authority over him, to replace certain rails on said track of said company's railroad, and which said rails it was necessary to replace for the safety of the passengers on the said line of road, and for the cars running thereon; and that said rails were of the weight of 560 pounds each, which rails the defendant required this plaintiff, as such foreman, with the aid of only one man, to load on hand-cars, take to the place where wanted, and place upon the ties of said line of railroad.

"And the plaintiff alleges and avers the fact to be that the labor required of him by the defendant was unusual and extra

hazardous, and exposed the plaintiff to unusual and extra hazardous risks to life and limb and of injury to his health and strength; and that the defendant knew that said labor was unusual and extra hazardous, and demanded the plaintiff to perform such labor and to handle such rails knowing said labor was unusual and extra hazardous, and then and there informed the plaintiff that unless he handled such rails and performed such services that he would be discharged from the services of the company and from the position of foreman, and a man put in his place who would handle such rails of the weight of 560 pounds, with the help as above stated.

"The plaintiff alleges that he objected to performing the work so required, and notified the defendant of his objections, and that the defendant stated to the plaintiff that he could take his choice, to perform the labor or throw up his job as foreman on said section; and that the plaintiff, after two or three times notifying the railroad company of the great risk there was in attempting to handle such rails, at the special instance and request of the defendant undertook said work and labor, cautiously and prudently guarding against accident and unnecessary exposure, notwithstanding, however, after the plaintiff had used all the caution that it was possible for him to use in handling said rails, and placing them upon the ties, as required by the defendant, in the regular discharge of his duty as such foreman, without any fault or negligence on his part whatever, the plaintiff received a severe injury, which injury will incapacitate him from the kind of work which he has heretofore been able to perform, or any other manual labor requiring great strength and endurance, which he had before that time possessed; which injury consisted of a rupture in the right side, which was caused by the handling of said rails for the defendant as above stated, and which injury greatly prostrated the plaintiff, and rendered him incapable of performing any manual labor whatever for some time thereafter; and that ever since said injury he has been compelled to wear a truss, and that he cannot and dare not exercise himself violently or to his full capacity or strength; and that, by reason of said injury he has been made a cripple, and is physically injured for life, to his great damage in the sum of $5,000.

"The plaintiff further alleges, that immediately after being injured he reported the fact to the defendant, and that said defendant has failed and refused to compensate him for said damage. The plaintiff further alleges, that having been in-

jured in the manner and form above specified, and incapaci-
tated from hard work, that he applied to A. A. Robinson, the
agent and employé of the defendant, high in authority, for a
position in the employ of the defendant with less exposure,
less risk and not requiring so much physical ability, tendering
and offering to the defendant his time and services to the full
extent of his strength remaining since said injury, but that
the defendant has failed, neglected and refused to furnish the
plaintiff with any other or lighter employment, but on the
contrary has lately notified the plaintiff that they no longer
desired his services, and have dismissed and discharged the
plaintiff, against his wish and desire."

The defendant demurred to this petition upon the ground
that it did not state facts sufficient to constitute a cause of ac-
tion, which demurrer was overruled; and the defendant then
answered, setting forth — first, a general denial; second, that
the injuries complained of were caused by the plaintiff's own
negligence; third, the two years' statute of limitations. A
trial was had before the court and a jury, and at the begin-
ning of the trial the defendant objected to the introduction of
any evidence, upon the ground that the petition did not state
facts sufficient to constitute a cause of action. This objection
was overruled as to the first count, and sustained as to the
second count, and the trial then proceeded upon the first count
only. After the evidence was all introduced, the court gave
to the jury the following among other instructions, to wit:

" You are instructed that a railroad company is bound to
use reasonable precautions for the safety of its employés, and
this extends to the furnishing sufficient force for the perform-
ance of any duty only ordinarily hazardous when performed
by a sufficient force, but which would be extraordinarily haz-
ardous when undertaken by an insufficient force; but in such
case if the employé undertook such duty without objection,
knowing it to be extra hazardous, he would not be entitled to
recover for any injury received in the performance of such
duty; but, on the other hand, if he made his objections to his
performance of such duty known, but was notwithstanding
directed or ordered to undertake the same and received an in-
jury therefrom, he would be entitled to recover."

The court also refused to give to the jury various instruc-

tions asked for by the defendant. At the close of the trial the jury found a general verdict in favor of the plaintiff and against the defendant, and assessed the plaintiff's damages at $3,000; and the jury also made a number of special findings. The defendant then moved to set aside the general verdict and for judgment in its favor, which motion was overruled, and then the defendant filed and presented a motion for a new trial upon various grounds, which motion was also overruled; and the court then rendered judgment in favor of the plaintiff and against the defendant for the amount of damages found by the jury, and for costs; and the defendant, as plaintiff in error, brings the case to this court for review.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*E. N. Smith, Aikman & Brooks,* and *J. B. Larimer,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This present action was commenced by Jacob Schroeder against the Atchison, Topeka & Santa Fé Railroad Company for $5,000 as damages for personal injuries. It was tried in the court below upon the first count of the plaintiff's amended petition and the defendant's answer, and judgment was rendered in favor of the plaintiff and against the defendant for $3,000 and costs, and the defendant, as plaintiff in error, now complains. The evidence of the plaintiff below fairly tended to prove the allegations of that part of his amended petition upon which his case was tried, and we have nothing to do with the other part of his petition, to wit, the second count. Much of the plaintiff's evidence, however, was contradicted by the evidence of the defendant. The plaintiff's evidence showed that he was the section foreman of section 4CX of the "El Dorado branch" of the defendant's railroad; that George J. Lockie was the roadmaster under whom he worked and received his orders; that John Faust was a section-hand working under the plaintiff and subject to his orders. The

injury of which the plaintiff complains occurred on February 17, 1886, substantially as follows: The plaintiff and Faust were unloading five railroad rails from what the witnesses call a "push car," and while unloading the last rail, the plaintiff holding one end and Faust the other, Faust threw, or in some manner let fall, his end while the plaintiff was holding his, and the plaintiff's end struck him in the lower part of his abdomen and produced a rupture; and this is the injury of which he complains. The plaintiff testified that the handling of these rails was a part of his duties as section foreman; that he was required by the roadmaster, George J. Lockie, to perform all his duties as section foreman with only one assistant, to wit, John Faust; that one assistant only was not sufficient; and that the handling of these rails in the manner in which he was required to handle them was dangerous and hazardous. The roadmaster, however, George J. Lockie, who at the time of the trial resided in California, and whose deposition was read in evidence on the trial, testified among other things as follows:

"While thus employed as such roadmaster I was acquainted with the plaintiff, Jacob Schroeder, who was a section-foreman under my orders, and in charge of section No. 4CX of said road, that being the first section north of the city of El Dorado. I never either ordered or requested Mr. Schroeder to change rails or to replace rails of said road with the help of only one man, but on the contrary, whenever there was work of that kind to be done by him I sent him whatever assistance he required. During the years that I have mentioned, that is while I was in charge of the "El Dorado branch" as roadmaster, it was customary for us to reduce the section force during the fall and winter months, and at times Mr. Schroeder only had one man regularly with him on his section, but, as I have already stated, whenever it became necessary from any cause to remove or replace rails, he was furnished with sufficient help, either by hiring an additional force for the time being, or by sending him men from some of the other sections of the road to aid him in making such changes of rails as might be necessary. In fact, Mr. Schroeder and all the other section foremen of that branch had general standing orders and authority from me to call upon each other for assistance whenever such assistance was in their judgment necessary, for

the purpose of changing or replacing rails, or doing any other work that rendered necessary or proper more force than such foreman might have under his immediate charge and direction at the time."

For the purposes of this case we shall take the evidence of the plaintiff as true; and under such evidence and the allegations of the plaintiff's petition, can he recover in this action? We would think not. The only allegation of negligence against the railroad company was that it failed and refused, notwithstanding the solicitations and protests of the plaintiff, to furnish him with sufficient help to perform his duties as section foreman. It is admitted and was shown that the plaintiff was an experienced railroad man, had worked at this same kind of business for many years, and knew all the risks and hazards of the business as well perhaps as any man could know the same. He was not employed for any particular length of time, and could have quit the defendant's employment at any time without violating any contract, or without leaving any contract of his own unfulfilled; and, if his own evidence is true, the company did not agree to furnish him with any additional help, but, on the contrary, utterly refused; and he had no reason to expect or to hope for any additional help. If the evidence of the defendant is true, however, he could have had additional help whenever it was necessary by simply asking for it. We shall consider this case, however, upon the theory of the plaintiff, and that is, that he desired additional help; that additional help was necessary; that he asked for it; that the railroad company, through its roadmaster, refused to give him any, and threatened to discharge him if he could not perform his duties without additional help; and that the injury occurred because of a want of sufficient help. This is substantially what the plaintiff alleged in his petition, and what his testimony showed on the trial. His testimony shows that the order from the roadmaster to reduce his force to one man only besides himself was received by him on November 30, 1885, and his injury did not occur until February 17, 1886. It was therefore not an order to perform

21 — 47 KAS.

some duty on such short notice that he did not have a sufficient time for reflection or consideration before he encountered the danger. He protested against the order, according to his own testimony, but it was not revoked or modified, and he had no reason to believe or to hope that it would be revoked or modified. We think the principles discussed and decided in the case of *Rush v. Mo. Pac. Rly. Co.*, 36 Kas. 129, *et seq.*, are controlling in the present case. In that case an elaborate opinion was delivered, which see. In the case of *Leary v. B. & A. Rld. Co.*, 139 Mass. 580, the following is decided:

"If a servant, of full age and ordinary intelligence, upon being required by his master to perform other duties more dangerous and complicated than those embraced in his original hiring, undertakes the same, knowing their dangerous character, although unwillingly and from fear of losing his employment, and is injured by reason of his ignorance and inexperience, he cannot maintain an action against the master for such injury." (Syllabus.)

In the case of *G. H. & S. A. Rly. Co. v. Drew*, 59 Tex. 10, the following is decided:

"The master is not liable in damages for an injury to his employé which results from the use of defective machinery, if the employé has full notice of the defect and of danger which will attend continuing the employment. The simple protest by the employé against the use of the machinery, when directed to use it, will not vary the rule, if, when having knowledge of the risk, he obeys the order." (Syllabus.)

In the case of *M. R. & L. E. Rld. Co. v. Barber*, 5 Ohio St. 542, the following is decided:

"It is the duty of a railway company to furnish the necessary and proper number of hands for the safe management of its trains; and for a delinquency in this particular the conductor of a train has a right to decline his charge, or refuse to run the train. But where he takes the charge, and runs his train for a length of time without a sufficient number of hands, he voluntarily assumes the risk, and waives the obligation of the company in this respect as to himself, and if injured by means of such delinquency on the part of the company, he is

without a remedy against the company for damages." (Syllabus.)

Also, in the case of *Woodley v. M. D. Rly. Co.*, 2 Exch. Div. L. R. 384, 389, the language of Chief Justice Cockburn is strong and to the point. Among other things he says:

"If a man chooses to accept the employment or to continue in it with a knowledge of the danger, he must abide the consequences so far as any claim to compensation against the employer is concerned."

In the case of *Wormell v. M. C. Rld. Co.*, 79 Me. 397, 405, (same case, 10 Atl. Rep., 49, 51, 52,) the following language is used:

"Every employer has the right to judge for himself in what manner he will carry on his business, as between himself and those whom he employs, and the servant having knowledge of the circumstances must judge for himself whether he will enter his service, or, having entered, whether he will remain. . . . But there are corresponding duties on the part of the servant; and it is held that the master is not liable to a servant who is capable of contracting for himself, and knows the danger attending the business in the manner in which it is conducted, for an injury resulting therefrom."

See, also, the cases cited in this last-cited case, and also the following cases: *Crutchfield v. R. & D. Rld. Co.*, 78 N. C. 300; *Stephenson v. Duncan*, 73 Wis. 404; same case, 41 N. W. Rep. 337; *Smith v. W. & St. P. Rld. Co.*, 42 Minn. 87; same case, 41 Am. & Eng. Rld. Cases, 289; *McGlynn v. Brodie*, 31 Cal. 376.

After a careful consideration of all the cases, we must say that, while in our opinion it is the duty of an employer, whether a railroad company or other corporation or person, to make the work of his or its employés as safe as it is reasonably practicable, yet when the employé, with full knowledge of all the dangers incident to or connected with the employment as it is conducted, accepts the employment, or, having accepted the same, continues in it with such full knowledge, and without any promise on the part of the employer, or any reason to expect on the part

Master and servant—dangerous employment—assumption of risk.

of the employé, that the employment will be made less danger-
ous, the employé assumes all the risks and hazards of the
employment.

It is also claimed by the plaintiff in error that the court
below erred both in the admission of evidence and in the ex-
clusion of evidence; but with the views which we entertain
concerning the matters already discussed, we think it is un-
necessary to consider these other alleged errors.

The judgment of the court below will be reversed, and the
cause remanded for further proceedings.

All the Justices concurring.