ALDACE F. WALKER *et al.*, *etc.*, v. L. G. SCOTT.

No. **11,912.*** (64 Pac. 615.)

SYLLABUS BY THE COURT.

PERSONAL INJURIES — *Assumption of Risk.* A servant assumes
the ordinary risks of his employment in cases where its dangers
are open to common observation and are as fully known to him as
to his employer, and where he is as capable of knowing and meas-
uring the dangers of such employment and is not induced to
continue in the work by any promise of betterment or indemnity
from his employer. In such a case the servant cannot recover
from his employer damages for any injury that may come to him
in the course of his employment.

Error from court of appeals, southern department;
*A. W. Dennison, B. F. Milton,* and *M. Schoonover,* judges.
Opinion filed April 6, 1901. Reversed.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plain-
tiffs in error.

*J. W. Deford,* and *W. A. Deford,* for defendant in
error.

The opinion of the court was delivered by

CUNNINGHAM, J.: The defendant in error brought
an action in the district court of Osage county against
the plaintiffs in error to recover damages on account
of personal injuries. The plaintiffs in error, who as
receivers were operating the Atchison, Topeka & Santa
Fe railroad, found it necessary to dig a trench on the
south side of the track, between it and the Marais des
Cygnes river, about a mile east of Quenemo, for the
purpose of riprapping the bank in order to prevent
the river from washing away the road-bed and track.
The work had progressed some three or four days be-

*THIS opinion should have been reported in 63 Kan. For opinion by court of
appeals, see 10 Kan. App. 413, 61 Pac. 1091.—REP.

fore the defendant in error entered into the employment of the plaintiffs in error to dig in such trench, but the trench had been excavated only to a depth of two or three feet at that time.   He commenced work on the 21st day of September, 1895, and continued at such work until the 9th day of October, when he was injured.   At that time the trench was from nine to twelve or thirteen feet deep.   The tools with which he worked were the ordinary pick and shovel.   The soil through which the trench was dug was a sandy loam of a dark gray color.   Defendant in error was about thirty-five years old, in good health, of ordinary intelligence, and possessed the ordinary faculties of sight and observation.   Prior to entering the employment of the receivers he had worked some at quarrying stone, mining coal, and digging wells, and possessed information which would ordinarily be secured by one under those conditions.   He was given no particular instructions as to what to do, when he hired to the receivers, except that he was wanted to dig in the trench with the other men.   There were some nine or ten other men employed on this work. The work was in charge of a foreman named Bell for a few days, when another man, who was supposed to know more about the work in hand, was sent to take charge.   No effort was made at any time by shoring or otherwise to prevent the caving in of the trench. No demand was made by the plaintiff at any time that any precautions be taken to that end or promises made by any one that such precautions would be taken.

For several days before Scott was injured he expressed his fears that a cave-in would occur, and it seems that the matter was talked over considerably by him with the other laborers and with the boss.   He expressed himself on several occasions as being fearful

that such an accident would occur. In this he was joined by some of his fellows, while others thought that he was wrong, and that everything was safe. The boss assured the plaintiff that there was no danger.

On the evening of the 8th of October Scott expressed in very decided terms his belief that a cave-in would occur before morning, and in a jocular way made a bet with the boss that one would occur during the night. The boss, however, still asserted that it would not. In the morning attention was called to the fact that no cave-in had occurred, but Scott still expressed his opinion that it was not safe to work in the trench and that somebody would be hurt, and he pointed out two or three places where he thought likely a cave-in would occur. On the morning of the 9th of October he, with some fellow laborers, was employed for a short time on the surface of the ground, but was finally directed by the boss to "get ready for the mud," which direction was understood to mean to put on their rubber boots and go into the trench. This they did. They had scarcely arrived at the place where they were to work when a cave-in did occur and Scott was injured. The trench was about nine feet deep at that place.

While the jury found in one of their special findings that he was injured at one of the places which he had previously pointed out as dangerous, the plaintiff's evidence seems to be that it was at another place. It is probable, however, that the injury occurred practically at one of the points which he had indicated. There was nothing in the evidence to show that the boss went into the trench to inspect the conditions there. It was shown that the proper and safe method of digging the trench would have been to slope the sides, or else to prop or shore the banks. Plaintiff

had noticed and called attention to the fact that water was seeping in from the river, that the ground trembled when the cars were passing along the track, and that there were cracks in the side of the trench, all of which indicated that a cave-in was imminent.

These are the facts substantially as they appeared from the testimony introduced by the plaintiff.

Defendants below demurred to the same, and the demurrer was overruled.   The defendants introduced no evidence, but stood upon their demurrer.   The jury rendered a verdict for the plaintiff, on which judgment was entered, and the case was taken to the court of appeals, where it was affirmed, and is now before this court upon certification.

The plaintiffs in error contend that this is a case in which the defendant in error assumed the risks of his employment which were apparent.   On the other hand, defendant in error contends that he had a right to rely upon the superior judgment and knowledge of the boss in charge.   While we think that the doctrine of assumed risks is in some respects a harsh one, and its application should not be enlarged, at the same time we are unable to distinguish this from many cases already decided by this court and courts of last resort in other states applying that doctrine.

It does not appear that the boss had any superior knowledge or opportunities of knowledge to those possessed by the defendant in error.   It does not appear that he went into the trench to make any inspection. It does not appear that he claimed to have any superior knowledge.   It does appear that the defendant in error had as great opportunity to know all the conditions as did the boss, if not greater.   He was fully alive to all the dangers of his employment and knew the conditions as completely as any one could.   It was his judgment and belief that a cave-in would occur.   It

52—67 KAN.

was the judgment and belief of some of his fellows, as well as the boss, that it would not occur. For some reason or other—because he wished the wages which his labor would bring, or because he finally concluded to rely on the judgment of others—he concluded to continue in the employment. In doing so he took upon himself all the risks attendant thereon, and having been injured is without remedy. The injury occurred by the operation of natural laws, the force and effect of which the defendant in error was as capable to determine as any one. He may not, having taken the risks which were apparent, which he knew and realized, shift the results when injury has occurred.

See *S. K. Rly. Co. v. Drake,* 53 Kan. 1, 35 Pac. 825; *A. T. & S. F. Rld. Co. v. Schroeder,* 47 id. 315, 27 Pac. 965; *Rush, Adm'x, v. Mo. Pac. Rly. Co.,* 36 id. 129, 133, 12 Pac. 582; *S. K. Rly. Co. v. Moore,* 49 id. 616, 31 Pac. 138; *Clark v. Mo. Pac. Rly. Co.,* 48 id. 654, 24 Pac. 1138; *Walsh v. St. Paul & Duluth R. Co.,* 27 Minn. 367, 8 N. W. 145; *Pederson v. City of Rushford,* 41 id. 289, 42 N. W. 1063; *Swanson v. Great Northern Ry. Co.,* 68 id. 184, 70 N. W. 978; *Reiter v. Winona & St. P. R. Co.,* 72 id. 225, 75 N. W. 219; *District of Columbia v. McElligott,* 117 U. S. 621, 6 Sup. Ct. 884, 29 L. Ed. 946; *Watson v. The Kansas & Texas Coal Co.,* 52 Mo. App. 366; *Brown v. Electric Railway Co.,* 101 Tenn. 252, 47 S. W. 415; *Louisville & Nashville Railroad Company v. Stutts,* 105 Ala. 368, 17 South. 29; *Borden v. Daisy Roller Mill Co.,* 98 Wis. 407, 74 N. W. 91.

The defendant in error cites three cases which he seems to think require us to overrule the doctrine of the cases which we have cited. The first is *Shortel v. The City of St. Joseph,* 104 Mo. 114, 16 S. W. 397, 24 Am. St. Rep. 317. This was a case in which the plaintiff, who was a day laborer not skilled in the

work which he was told to do, and not aware of the dangers thereof, was directed by a skilled engineer to go under an arch and remove the supports thereof. Relying on the assurance that the cement which had been used in the construction thereof was sufficiently hardened to prevent a fall of such arch, plaintiff did so, whereupon the arch fell in and injured him.   It was held that he had a right to recover.   It was said in that case :

"Though the servant is ordered into a place of danger, still, if the danger is so obvious that a prudent person, though acting in the capacity of a servant, would not obey the order, then he will be guilty of contributory negligence which will defeat a recovery."   (Page 120.)

Neither the facts nor the law of the case cited sustain the contention of the defendant in error.

We are also cited to the case of *Carlson v. Northwestern Telephone Exchange Co.*, 63 Minn. 428, 65 N. W. 914.   It appears that plaintiff was engaged in digging a deep ditch.   Observing the indications of danger of a cave-in, he complained to the person in charge of the work, whereupon he was sent to another portion of the work, and an effort made to make the first point safe by curbing the same ; but this curbing was defectively put in, and the ditch was still an unsafe and dangerous place in which to work. Plaintiff was then directed to return to this place and continue his work.   There was no indication but that the curbing had made the work safe, and no information concerning its insufficiency or caution to the plaintiff was given.   Under these circumstances plaintiff was injured.   The law was stated in the syllabus as follows :

"The foreman negligently ordered the plaintiff from the place where he had been working into the ditch,

at a point where he had not previously worked, which was a place of unusual danger by reason of a crack in the earth on the side of the ditch and defects in the curbing, which danger and defects were not obvious or known to the plaintiff, who obeyed the order, and was injured by the caving in of the ditch. *Held,* that in giving the order the foreman was a vice-principal and the defendant liable for his negligence.''

The third case is that of *Stephens v. The Hannibal & St. J. Ry. Co.*, 96 Mo. 207, 9 S. W. 589, where the facts and the law were stated in the following syllabus:

''Plaintiff, a section-hand in the defendant's employment, was directed by the foreman to get off the track on which they were working to make way for a train. He did so, but called the foreman's attention to some stones left on the track. The latter said, 'It is time you were getting them off.' Plaintiff understood this as an order and when the train was about 100 yards away and rapidly approaching attempted to move them, when he was struck by the engine and injured. *Held,* that the evidence did not show that the danger was so open and obvious to plaintiff that he ought to have refused to obey the order, and that a demurrer to the evidence was properly overruled.''

In the body of the opinion the court used this language: ''Generally, a servant cannot recover for those injuries resulting from causes seen and known by him.''

We do not think that any of these cases sustain the contention of the defendant in error, but rather maintain the position which we take in this case.

The judgment of the court of appeals, as well as that of the district court of Osage county, will be reversed, with instructions to sustain the demurrer of the plaintiffs in error to the evidence of defendant in error, and to render judgment in favor of the plaintiffs in error for costs.

All the Justices concurring.