WILLIAM P. GILLASPIE v. UNITED IRON-WORKS COMPANY.

No. 15,062.  (90 Pac. 760.)

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Assumption of Risk.* The ordinary rule of the non-liability of an employer for injury sustained by an adult employee of ordinary discretion through the voluntary use of a defective tool, when the facts and the danger were within the comprehension of any ordinarily intelligent and prudent man and were as completely within the knowledge and appreciation of the servant as of the master, is here applied to the case of a man who lost an eye by being struck by a sliver of steel from a "set," or "snap," used to receive the blows of the sledge in riveting I-beams.

Error from Wyandotte district court; J. McCABE MOORE, judge. Opinion filed June 8, 1907. Affirmed.

*Bird & Pope,* for plaintiff in error.

*I. P. Dana,* and *A. L. Berger,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: In this case it appears that the plaintiff lost an eye by being struck by a sliver of steel from a tool called a "set," or "snap," used to receive the blows of a sledge in riveting the plates of metal

beams. The "snap," or "set," in question was a lump of steel, shaped somewhat like the head of a small sledge. The top surface was flat, the bottom was cupped to fit over the ends of rivets, and it was held by a ⅜-inch wire handle bent round it in a groove cut for that purpose. A rivet red-hot from the forge would be inserted from the bottom in a hole in the plates to be riveted. One man would hold the rivet in place by a lever of railroad-iron placed beneath it, another man would adjust and hold the snap, and a third would strike the top of the snap with a sledge and thus form the second head of the rivet. In order that the man manipulating the bar of railroad-iron might see and know that it supported the rivet and held it firmly against the plates of the beam, he was required to bend over and to bring his eyes down to the plane of the snap, and within three and a half feet of it. The sledge used weighed eight pounds.

The plaintiff was thirty-five years old at the time of the accident. He had been a car-repairer for about a year, in which business he wrecked cars, remodeled cars, took out and knocked down car-trucks, put in new trucks, and as occasion required used sledge-hammers. He solicited and was given employment by the defendant, after a time was set at riveting, and had been doing that work four or five days previous to his injury. Part of the time he would wield the sledge and part of the time hold rivets in place. He gave no intimation that he was incompetent to perform this work, although it was new to him, and under the law he held himself out to his employer as being competent to undertake it. (*U. P. Rly. Co. v. Estes,* 37 Kan. 715, 16 Pac. 131.) He does not claim to be deficient in any of his faculties for observation or to be below the average in intelligence.

The plaintiff had been using a ¾ snap on ¾ rivets until the day of the accident, when he commenced working with ⅝ rivets and needed a ⅝ snap. Together with another workman he went to the tool-box and

found there the snap in question. They took it out, heated a piece of wire, and bent it around the snap for a handle. It was the only ⅝ snap in the box, and a ¾ snap could not be used efficiently on ⅝ rivets. The snap was old and worn. It was rusty from disuse, and was battered by long use until the top was fringed around the edge with hanging particles of steel. Without making application to the foreman for a better one an attempt was made to use it, and while the plaintiff was holding a rivet in place a blow from the sledge sent a sliver of steel ¼ of an inch long, ⁹⁄₁₆ of an inch wide, and approximately ⁹⁄₃₂ of an inch thick at the thickest place, into his eye. The bright spot left on the snap where the sliver broke off was about the size of a pin head, or a little larger. The plaintiff says that he saw no slivers flying while at work with the ¾ snap, the condition of which, however, he does not describe, and he says that he was not aware of any danger from particles of steel flying from the snap that injured him.

On the trial of an action for damages brought by the plaintiff against his employer a demurrer was sustained to evidence disclosing the foregoing facts, and the propriety of this ruling is the sole question for consideration.

The plaintiff's conduct was entirely voluntary and unconstrained. His opportunity for observation was ample, and his observation was in fact both comprehensive and accurate. He saw and knew the condition of the snap, and knew the causes which had operated to produce the condition in which he found it. He saw and knew that the blows of sledges had battered the top of that steel tool until it was encircled by a fringe of splinters, some of which, a quarter of an inch long, were clinging by attachments of pin-head size. He further saw and knew that these particles had become rusted from disuse of the tool. He possessed and was required to exercise the discretion belonging to his years. His experience was ample to teach him the

effect of sledge-hammer blows upon matter disintegrable by force applied in that manner, and he cannot be heard to say that he did not appreciate the fact that the blows of an eight-pound sledge, sufficient to rivet the plates of I-beams with ⅝-inch rivets, would not break off fragments of the rusted fringe of steel around the crown of the snap, or that he did not appreciate the fact that under such blows slivers of the fringe might fly the short distance between the snap and his face when he was holding rivets in place.

The facts and the danger they presented were both within the comprehension of any ordinarily intelligent and prudent man, and were as completely within the knowledge and appreciation of the plaintiff as of his employer. Therefore he cannot recover. (*Lanyon v. Bell,* 64 Kan. 739, 68 Pac. 609; *Walker v. Scott,* 67 Kan. 814, 818, 64 Pac. 615; *S. K. Rly. Co. v. Drake,* 53 Kan. 1, 35 Pac. 825; *S. K. Rly. Co. v. Moore,* 49 Kan. 616, 31 Pac. 138; *Clark v. Mo. Pac. Rly. Co.,* 48 Kan. 654, 29 Pac. 1138; *A. T. & S. F. Rld. Co. v. Schroeder,* 47 Kan. 315, 27 Pac. 965; *Rush, Adm'x, v. Mo. Pac. Rly. Co.,* 36 Kan. 129, 12 Pac. 582; *Jackson v. K. C. L. & S. K. Rld. Co.,* 31 Kan. 761, 763, 3 Pac. 501.)

The case of *Railway Co. v. Bancord,* 66 Kan. 81, 71 Pac. 253, is distinguishable from this one for the large number and diverse character of the facts and relations to be synthetized before apprehension of danger would arise. The case of *Wurtenberger v. Railway Co.,* 68 Kan. 642, 75 Pac. 1049, is different in respect to the certainty of knowledge possessed by the injured party respecting the forces involved, and in that a surmise of danger based upon inadequate information was overcome by the assurance of an experienced foreman. In *Seeds v. Bridge Co.,* 68 Kan. 522, 75 Pac. 480, the conduct of the foreman disarmed the plaintiff from protecting himself and disqualified him from judging prudently of the danger to which he was exposed. In *C. K. & W. Rld. Co. v. Blevins,* 46 Kan. 370,

26 Pac. 687, the servant did not have an opportunity to inspect a tool handed him by the master for immediate use. In *Buoy v. Milling Co.*, 68 Kan. 436, 75 Pac. 466, the servant's attention was not drawn to the defects in the scaffolding, the danger was not obvious, and he was of course under no duty to institute an independent investigation.

The foregoing decisions of this court discuss all the principles by which the rights of the parties to this proceeding are to be determined. It is not necessary to enter upon a review of the decisions of courts of other states in analogous cases. A careful analysis of the facts involved in those cited by the plaintiff will disclose that none of them is antagonistic to the view here taken.

The judgment of the district court is affirmed.