THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. E. C. STONE *et ux.*

No. 15,462. (95 Pac. 1049.)

SYLLABUS BY THE COURT.

RAILROADS—*Injury to Employee—Defective Appliance.* A railroad company is not liable for injuries received by one of its employees which result from the use by him of a defective appliance when the defect is known to such employee or is of such a character as to be discoverable by mere casual observation.

Error from Ford district court; EDWARD H. MADISON, judge. Opinion filed April 11, 1908. Reversed.

STATEMENT.

CHARLES E. STONE, an unmarried man about twenty-one years of age, was employed by the Atchison, Topeka & Santa Fe Railway Company at Dodge City as a water-changer. He had been employed at that business about fourteen days, but was familiar with its duties. Before being employed as water-changer he had been a

"roustabout" in the roundhouse at that place about three years.

On July 16, 1905, engine No. 531 came in from a trip, and Stone was directed to change the water in it, and he proceeded to do so; but while engaged in that duty he was fatally scalded, and died six days thereafter. The parents of the deceased commenced this action in the district court of Ford county to recover damages for the loss of their son, claiming that the railway company was negligent in failing to furnish proper appliances with which to do the work required of the deceased.

The history of the transaction from which the circumstances relied upon by the parents must be gathered is, in substance, as follows: On each side of a locomotive engine, below the boiler and back of the drive-wheels, there is what is called a blow-off cock, consisting of a short metal tube with inside threads, projecting from the side of the engine. In order to let the water out of the boiler what is known as a blow-off pipe is attached to the blow-off cock above described, the valve in the latter is opened, and the hot water and remaining steam escape through the blow-off pipe into the ash-pit beneath the engine. The blow-off pipe is attached to the boiler by screwing one end of it into the blow-off cock. Blow-off pipes were kept together at the roundhouse where the deceased worked, near the hostler's office, and water-changers went there and took one when necessary for use, and returned it when the work was finished. On the day in question, after Stone had been at his engine, he was seen running away screaming for help. The blow-off cock on his engine was open, the steam and water escaping, and his clothes were saturated with scalding water. A blow-off pipe was found on the ground, several feet from the engine —about ten feet, as stated by one witness, and by another about four feet west and directly under the blow-off cock. The threads of the blow-off pipe, which screw into and fasten it to the blow-off cock and the

boiler, were worn, bent and defective. The blow-off pipes are furnished by the company, and the part which screws into the blow-off cock is usually kept in stock where it can be obtained by the employees as needed; and whenever one is needed it is the duty of the employee to apply for it. The defective condition of the blow-off pipe was apparent to any one upon examination. The threads were so worn that the grooves were not very plain. On the trial the jury returned special findings of fact which read:

"(1)  Ques. How old was Charles E. Stone on the 22d day of July, 1905, the day upon which it is claimed he died?  Ans. Twenty-one years, six months and a few days.

"(2)  Q. Did Charles E. Stone receive the injuries complained of on the 16th day of July, 1905, at the roundhouse of the defendant company in Dodge City, Kan.?  A. Yes.

"(3)  Q. If you answer the last above question 'Yes,' please state for what length of time just prior thereto said Charles E. Stone had been in the employ of the defendant at its roundhouse at Dodge City, Kan.  A. Last employment was about thirteen months.

"(4)  Q. During the time Charles E. Stone had been in the employ of the defendant company at its roundhouse in Dodge City, Kan., had he been employed and working in and about locomotive engines and other work required in said roundhouse?  A. Yes.

"(5)  Q. At the time of receiving his injuries was Charles E. Stone a water-changer for the defendant company at its roundhouse in Dodge City, Kan.?  A. Yes.

"(6)  Q. If you answer the last above question 'Yes,' please state for what length of time just prior to July 16, 1905, said Charles E. Stone had been engaged as such water-changer.  A. Fourteen days and five hours.

"(7)  Q. During the time said Charles E. Stone had been employed as a water-changer in the engines of the defendant company at Dodge City, Kan., had he changed the water in from five to seven engines each day during such time?  A. Yes, or assisted to do so.

"(8)  Q. Was Charles E. Stone familiar with the manner and the means to be used in changing the water

in locomotive engines for the defendant company on the 16th day of July, 1905? A. Yes.

"(9) Q. Was the boiler of the engine No. 531 washed out on the 16th day of July, 1905? A. No."

"(11) Q. Did Charles E. Stone, in the performance of his duty as a water-changer, change the water in engine No. 531 on the 16th day of July, 1905? A. Attempted to do so.

"(12) Q. Was a blow-off pipe used in changing the water in engine No. 531 on the 16th day of July, 1905? A. In the attempt to change the water the blow-off pipe was used.

"(13) Q. Among the duties attending the changing of water in engine No. 531, did Charles E. Stone procure for his use a blow-off pipe? A. Yes.

"(14) Q. If you answer the question last above asked 'Yes,' please state if Charles E. Stone placed the same in position in said engine. A. Yes.

"(15) Q. Did Charles E. Stone, on July 16, 1905, turn or adjust the blow-off pipe on engine No. 531? A. Yes.

"(16) Q. From what place did Charles E. Stone obtain the blow-off pipe used in changing the water in engine No. 531, if he obtained and used such pipe for such purpose? A. In the corner by hostler's office.

"(17) Q. Was the blow-off pipe used by said Stone, if he used one, selected by him from several lying in a pile near the hostler's office? A. Took it from the corner where they were kept.

"(18) Q. Did any one order or direct Charles E. Stone to change the water in engine No. 531 on July 16, 1905? A. Yes.

"(19) Q. If you answer the last above question 'Yes,' please state who so ordered or directed him in that particular. A. He received his orders from the head hostler in the roundhouse.

"(20) Q. Were the threads of the blow-off pipe worn on July 16, 1905? A. Yes.

"(21) Q. If you answer the last above question 'Yes,' please state if the worn condition of the threads of said blow-off pipe were open and obvious. A. Yes, if their attention had been called to it.

"(22) Q. Could any one by merely looking discover that the threads of the blow-off pipe were worn? A. Yes, if their attention had been called to it.

"(23) Q. Was the worn condition of the threads of

the blow-off pipe so obvious and plain to be seen that anybody upon a casual look and inspection would observe the same? A. If their attention had been called to it.

"(24) Q. Were the blow-off pipes under the supervision and direction of the boiler-washer and water-changer? A. No.

"(25) Q. Was the boiler-washer on duty at the roundhouse of defendant at Dodge City on July 16, 1905? A. No.

"(26) Q. Did the boiler-washer or Charles E. Stone or any other person give any notice to the defendant of the worn condition of the blow-off pipe prior to the injury of Charles E. Stone? A. No."

"(28) Q. If Charles E. Stone had looked and casually inspected the threads of the blow-off pipe when he obtained and used the same in changing the water in engine No. 531, could he have observed and known the condition thereof? A. Yes, if his attention had been called or directed to it.

"(29) Q. If you find that the defendant was guilty of any negligence which was the proximate cause of the injury to Charles E. Stone, please state fully in what particular it was negligent, and who, if any one, was guilty of such negligent acts. A. Defendant, by neglecting to keep new blow-off pipes in storehouse; and the blow-off pipe in use was unsafe and insufficient; and that the condition of the threads of said blow-off pipe had existed for such a length of time prior to said injury that the condition was known to the defendant or would have been known to the defendant had it exercised reasonable care concerning the same.

"(30) Q. Did Charles E. Stone ever make any complaint to the defendant company of the condition of the blow-off pipe which was used on engine No. 531 on July 16, 1905? A. No."

"(32) Q. If you find Charles E. Stone selected the blow-off pipe in question and arranged it on engine No. 531, please state if in doing so he used his own judgment and discretion. A. He took the blow-off pipe from corner where kept, and for the latter part of question our answer is 'Yes.' "

The jury returned a verdict for the plaintiff, and the railway company brings the case here for review.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*B. F. Milton,* and *A. B. Reeves,* for defendants in error.

The opinion of the court was delivered by

GRAVES, J.: The plaintiffs are prevented from recovering in this case because of the contributory negligence of the person injured. The facts found by the jury clearly indicate that Charles E. Stone was fully aware of the defective condition of the blow-off pipe when he used it. While there is no direct evidence of this fact, it is beyond the range of reasonable possibility that it could escape his notice. He, better than any other person, had an opportunity to see and know its condition. He had it in his hands and screwed it into the blow-off cock. Its defective condition was open to the casual observation of any person. His duty and safety both required him to examine the blow-off pipe as to its sufficiency. If he did not know, then his want of knowledge was the result of gross negligence, and is unavailing. It was his duty to select a good blow-off pipe, if there was one, and if not, then it was his duty to apply to the hostler for one which was not defective. Not having done this, his use of the defective pipe was voluntary and at his own risk. He was familiar with the work and aware of its danger. It has long been settled by the decisions of this state that a person cannot voluntarily and recklessly place himself in danger, and then shift the responsibility after an injury has been received. (*Jackson v. K. C. L. & S. K. Rld. Co.,* 31 Kan. 761, 3 Pac. 501; *Rush, Adm'x, v. Mo. Pac. Rly. Co.,* 36 Kan. 129, 12 Pac. 582; *A. T. & S. F. Rld. v. Schroeder,* 47 Kan. 315, 27 Pac. 965; *Clark v. Mo. Pac. Rly. Co.,* 48 Kan. 654, 29 Pac. 1138; *S. K. Rly. Co. v. Moore,* 49 Kan. 616, 31 Pac. 138; *S. K. Rly. Co. v. Drake,* 53 Kan. 1, 35 Pac. 825; *Railway Co. v. Puckett,* 62 Kan. 770, 64 Pac. 631; *Walker v. Scott,* 67 Kan. 814,

64 Pac. 615; *Lanyon v. Bell,* 64 Kan. 739, 68 Pac. 609; *Gillaspie v. Iron-works Co.,* 76 Kan. 70, 90 Pac. 760; *Railway Co. v. Weikal,* 73 Kan. 763, 84 Pac. 720.)

The facts having been fully found by the jury, judgment may be ordered. The judgment of the district court is reversed, with directions to enter judgment for the defendant.