No. 20,648.

JOSE DURAN, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA
FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

FEDERAL EMPLOYER'S LIABILITY ACT—*Negligence—Injury to Employee—
Assumption of Risk.* A laborer was cutting boards in two with an
ax, when he was directed by his foreman to break them by fastening
one end of each in a tripod and stamping on the other end. There-
tofore he had cut them with an ax provided by his employer. In
breaking, as thus directed, he was, in a few minutes, injured by a
splinter from one of the boards flying and striking him in the eye.
The foreman testified that he did not want the plaintiff to break them
that way because he was liable to hurt himself. The jury, in addition
to a general verdict for the plaintiff, found among other things that
the method thus directed and used was more dangerous than the
one the workman had been following, that he did not know the method
directed was dangerous, and that its danger was not apparent and
obvious to a man of his intelligence. *Held,* that as he did not realize
and appreciate the danger of obeying the order he is not barred of
recovery on account of assumption of risk.

Appeal from Wyandotte district court, division No. 3; HUGH
J. SMITH, judge. Opinion filed February 10, 1917. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and
*Harlow Hurley,* all of Topeka, for the appellant.

*W. C. Rickel, E. S. McAnany,* and *M. L. Alden,* all of Kansas
City, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff was a common laborer in the de-
fendant's repair shops. Workmen were dismantling a pas-
senger coach, and the boards removed therefrom were required
to be broken up for use in the furnace. The plaintiff began
cutting them with an ax, when, as he testified, the foreman
came along, took the ax out of his hand, threw it to one side,
placed one of the boards under the cross pieces of a tripod
under the coach in some way not made clear by the record and
broke it by stamping his feet on it, and told the plaintiff to do
it that way and to hurry up. The plaintiff broke the boards

that way four or five minutes, and in breaking one of them, which was very brittle, the splinters flew up and hit him in the face, one of them in the eye. The evidence of another witness was to the effect that the foreman came around where the plaintiff was breaking the boards with the ax and said: "Well, that is too slow; I am going to show another and better way to do it. We have lots of work to-day and you need to work a little faster." The foreman testified that the plaintiff had always used the ax before that time to cut up these boards; that about five minutes before the accident he had been there and the plaintiff was breaking them in the tripod; that he told him to quit it; that he did not seem to obey his orders. In response to the question, "Why did you want him to quit breaking them in the tripod?" he answered, "Well, I knew it was wrong to break them in the tripod because he was liable to hurt himself."

The action was under the employer's liability act, and the jury were instructed that the plaintiff assumed the ordinary risks and hazards of his employment, that is, such risks and dangers as are open and obvious to a person of ordinary discretion, intelligence and foresight, and that if they believed from the evidence that the risk and danger of injury by a flying splinter was so open and obvious that in the exercise of ordinary care and caution for his own safety the plaintiff would have known of such danger and been able to have avoided the same and escaped injury, and that such danger was one of the ordinary risks and hazards of the employment in which he was then engaged, they must find for the defendant. Further, that if the foreman directed the plaintiff to cease using the ax and to break the boards in the manner alleged, which was more dangerous, then the plaintiff would be entitled to recover unless the danger and hazard in doing the work in that manner was so open and obvious to a person of his apparent intelligence and discretion that he must be held to have assumed the risk. There is no complaint of this instruction. The jury returned a verdict for the plaintiff, and in answer to special questions found that splinters are occasionally thrown off or fly when dry boards are broken; that the plaintiff did not know that they are frequently thrown off;

that axes had been furnished and kept for use in cutting or breaking up such scraps of lumber.

"8. Was it more dangerous to break up the scraps of lumber by stepping thereon, than it would have been to use an ax in cutting or breaking the same? Ans. Yes.

"9. Was the danger of splinters flying and striking the plaintiff when a board was broken by stepping thereon, apparent and obvious to casual observation? Ans. No, not to a man of plaintiff's apparent intelligence.

"10. If you find that the defendant was guilty of any negligence that caused the injury to the plaintiff, state fully of what that negligence consisted. Ans. Failure to stop plaintiff from breaking boards in the tripod.

"11. Had the defendant instructed the plaintiff to break the board by stepping thereon, as he was doing, at the time he was injured? If so, what agent of the company had so instructed him? Ans. Yes. Jesse Dix, foreman in charge of the Mexicans.

"12. Did the plaintiff know that it was dangerous to break boards by bending or stepping on same? Ans. No."

The defendant moved for judgment on the findings, which was overruled. A motion for new trial was also overruled and defendant appeals.

Our ordinary knowledge of the effects of chopping kindling is invoked in behalf of the proposition that splinters will frequently fly from dry boards when broken either by the foot or by an ax. There is a difference between breaking boards with an ax and cutting them in two with an ax. Plaintiff testified:

"The lumber had to be cut before I could burn it because the furnace tender didn't want it to come that length. I got an ax in the shop to cut it with. I started cutting the boards with the ax."

On cross-examination:

"Jesse Dix (the foreman) was the one that told me to break the boards, not to chop them. . . . I had been engaged in cutting boards some time before the accident."

He also testified that it was the usual way to take the ax and chop them and that Mr. Dix had never objected to his using an ax before that day.

"The boards usually cut were many times dry and many times not. I had never noticed any splinters flying before. . . . I had broken six or seven with my foot before I was hurt. No splinters flew from those six or seven boards. They were all dry boards."

The foreman testified that he did not want Duran to break the boards in the tripod, and that he had told him to use the ax; that it had always been the custom to use the ax.

"Two axes were kept for that purpose. I never instructed the plaintiff in any way to break boards by stepping on them. . . . He knew enough to go and get the ax and start to cut them. That is what he did. . . . He had always used the ax to cut up these boards before that time."

The plaintiff's evidence was corroborated by witness Alonzo, and the jury evidently believed their version of the matter rather than the foreman's.

From the plaintiff's evidence and the findings of the jury we have the case of a Mexican laborer of meager intelligence, used to cutting the boards with an ax, hurriedly ordered by his foreman to break them in a way which, by the testimony of the foreman himself, was likely to cause him injury. Promptly obeying, the workman received the wound in his eye. The sole defense argued is that the danger of flying splinters was so apparent that he must be held to have assumed the risk. The danger arising from breaking boards with either an ax or his feet was one of the ordinary risks of the plaintiff's employment as a common laborer, and for an injury from such cause there can be no recovery, defendant says, and cites *Walker v. Scott,* 67 Kan. 814, 64 Pac. 615; *Railway Co. v. Weikal,* 73 Kan. 763, 84 Pac. 720; *Gillaspie v. Iron Works Co.,* 76 Kan. 70, 90 Pac. 760; *Railway Co. v. Stone,* 77 Kan. 642, 95 Pac. 1049; *Railroad Co. v. Mealman,* 78 Kan. 496, 97 Pac. 381; *Iron-works Co. v. Green,* 79 Kan. 588, 100 Pac. 482. In the Walker case the employee, who had repeatedly insisted that there was danger of a cave-in, nevertheless went to work in the trench, and was held to have assumed the risk. The syllabus limited the application of the rule to cases in which the dangers are open to common observation, as fully known to the workman as to his employer, and in which he is capable of knowing and measuring the dangers of such employment. The facts and findings here do not bring this case within the rule thus announced. Weikal was holding a torch for a machinist working on a steel shaft of certain hoisting machinery, using a chisel, from which a chip flew, striking the torch holder in the eye. The court said he was a young man of intelligence and experience,

who had worked at the place for some time and must have observed—which his own testimony showed—that chips would fly from a chisel.   Gillaspie was injured in a similar way.

The court said:

"His opportunity for observation was ample, and his observation was in fact both comprehensive and accurate.   He saw and knew the condition of the snap, and knew the causes which had operated to produce the condition in which he found it." (p. 72.)

In the Stone case the plaintiff, having been directed to change the water in an engine, was fatally scalded by reason of a defective blow-off pipe.   Because of his knowledge of the pipe—greater than that of any other person—he was held guilty of contributory negligence.   Mealman was held to have assumed the risk of using a hand car with a defective brake, because he not only knew all about it, but had without complaint or criticism of its condition called the attention of his foreman thereto and continued to use it.   Green was injured by a defective gang plank.   He was held to have assumed the risk for the reason that he knew all about the condition of the gang plank over which he had been passing for ten days without complaint or promise of repair.

In *Brizendine v. Railroad Co.*, 96 Kan. 691, 153 Pac. 495, it was decided that although the plaintiff had reasonable means of knowledge of the machinery and its condition the finding of the jury that he did not realize the danger of the situation placed the case within the frequently announced rule that such appreciation must exist in order for assumption of risk to bar recovery.   The decisions there cited and followed fully sustain such holding.

Here the jury have in effect found that the plaintiff with his degree of intelligence and his opportunity neither knew nor comprehended the danger of doing the work in the way directed by his foreman.   Assumption of risk is a legitimate defense in such actions (*Barker v. Railway Co.*, 88 Kan. 767, 129 Pac. 1151), but we can not, in the face of the record, assume or take judicial notice that the danger of obeying the order received was apparent and so appreciated or realized by the injured workman that he should fail of recovery because of the risk assumed by such obedience.

The judgment is therefore affirmed.

BURCH, PORTER and DAWSON, JJ., dissent.

13—100 KAN.

ON REHEARING.

Filed April 12, 1917.

A rehearing having been granted and the case having been considered on further presentation, the court, divided as before, adheres to the former decision.