<sup>□</sup> No. 22,003.

ORAL R. FLETCHER, *Appellee,* v. THE HENRY BADEN MERCAN-
TILE COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Unsafe Work—Explosion of Gas—Injuries—
Contributory Negligence—Assumption of Risk.* The mere fact that
in the judgment of the employee an act required by the employer
is unsafe does not, as a matter of law, render him guilty of negligence
in performing it, if the employer assures him that there is no danger.
He cannot be charged, as a matter of law, with either contributory·
negligence or with having assumed the risk, merely because, before
notifying the master, he had entertained fears as to the possibility
of injury by circumstances coming to his own knowledge, where he
afterwards relies upon the assurance of the master that such work
may be performed in safety, unless, of course, the danger was so
obvious that no man of ordinary prudence would incur it.

Appeal from Montgomery district court; JOSEPH W. HOL-
DREN, judge. Opinion filed November 8, 1919. Affirmed.

*Thomas E. Wagstaff,* of Independence, and *Charles Bucher,*
of Coffeyville, for the appellant.

*J. D. Brown,* of Independence, and *Charles D. Welch,* of
Coffeyville, for· the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff sued his employer to recover for
injuries received in an explosion of natural gas. There was a
judgment in his favor, from which defendant appeals.

The Henry Baden Mercantile Company was engaged in the
wholesale grocery and dry-goods business at Independence.
In connection with its grocery it operated a cold-storage de-
partment in two rooms of a brick building. The plaintiff, a
man 37 years of age, was employed in this department. A few
weeks before the explosion he detected what he believed to
be the odor of natural gas in one of the storage rooms, and
notified John Baden, the general manager of the defendant.
Baden assured him that the odor was not natural gas; that
it was impossible that there could be gas in the building, for
the reason that when the building was erected the gas was

shut off in the alley, and stated that the odor which plaintiff referred to was caused by some chemical used in preserving the dried fruits kept in storage. About this time another employee notified Baden that there was an odor of natural gas in the room, but the manager told him that the gas had been cut off at the alley, and said "What you boys smell there is the odor of dried fruit, and the chemicals used" in the fruit. Baden's own testimony is, that after he had been spoken to the second time about the matter, he informed plaintiff that he was going to make a test to ascertain whether there was natural gas there or not; that at the noon hour when the men were absent he went into the room and smelled what he thought was foul air; was confident it was n't natural gas, but in order to satisfy the employees that he was correct, he lighted two matches and held them above his head, and that both matches went out; that this was all he did; that he did not call up the gas company, nor call a plumber to make a test, because he did not consider there was any reason for doing so. He testified that afterwards he reported to several of the employees, including plaintiff, about the test, and what he had found, and assured them they need not be afraid of any natural gas being there. His testimony is, that he knew if there was any natural gas in the storage room it would have to come from the outside, but that he made no investigation outside.

The explosion occurred on February 24, and seriously injured plaintiff. A plumber, called after the explosion to investigate, testified that within 30 minutes after he started his investigation he found the presence of gas along the south wall in the alley; that he lighted the gas and it burned on top of the wall and on top of the foundation for 12 or 15 feet east and west and with a blaze 2 or 3 inches high. The witness dug down about 16 inches and found a service pipe which came south through the foundation wall of the building and extended to a 3-inch main in the alley; he cut this pipe and discovered that it was broken off, and after uncovering it found that it was rusted off at the saddle near the place where the service pipe joined the main, and that natural gas was escaping there. His experience was, that natural gas follows the line of least resistance, and where there is a ditch the ground is bound to be looser, and the gas follows the loose dirt. He gathered up

some of the loose dirt along the old trench, and it burned when he applied a lighted match.

The evidence and the general verdict establish defendant's negligence as charged in the petition, and, moreover, they furnish no basis for the defendant's claim that plaintiff's negligence contributed to his injury, nor that he assumed the risk. The demurrer to the evidence was rightly overruled. The defendant's theory was that the explosion was shown to be the result of an unavoidable accident. But it was not an unexpected event, happening in an unusual manner from a known cause that could not reasonably be expected or foreseen. The defendant owed the plaintiff the duty of using reasonable care to provide him with a reasonably safe place in which to work. Whether the defendant exercised reasonable care in the way in which the manager undertook to discharge this duty was a question for the jury.

Counsel for the defendant discuss the demurrer as though the defendant's testimony must be considered, and it is insisted that, since the defendant made a test to discover whether or not natural gas was present in the storage room, the overruling of the demurrer amounts to a holding that the master is an insurer of the safety of his servants. The plaintiff offered no evidence of any test having been made by the defendant. The demurrer admitted the facts shown by the plaintiff's evidence aided by every reasonable inference which might be drawn by the jury in favor of the plaintiff's theory.

Notwithstanding the evidence showing that the manager repeatedly stated that the gas had been shut off in the alley when the building was erected, it is insisted that no evidence was offered to show that defendant had any knowledge that there were gas mains in the alley adjacent to the storage room; notwithstanding the evidence showing complaints and warnings by different employees, it is insisted that defendant had no knowledge that gas was escaping. It is urged that there was no evidence to show that defendant had any control over the main from which the gas escaped. It did not devolve upon plaintiff to show how the gas escaped, or that it came from the pipes in the alley. The duty rested upon the defendant to exercise reasonable care in making an investigation, and the jury doubtless were not impressed with the so-called test made by the general manager; and, in view of the testimony

showing that a plumber within 30 minutes after he was called to investigate had no difficulty in finding where the escaping gas came from, and, in view of the information defendant had of the location of the main and the service pipes in the alley, and that the service pipe had been shut off from the building, it is plain that the jury were warranted in their conclusions. Moreover, even if Baden had known nothing about the location of the main pipes and the service pipes, some officer of the defendant must have known, and it was Baden's duty to report it to his superior. In any event, the plaintiff is not bound by the manager's ignorance of the facts.

The case of *Gillaspie v. Iron-works Co.*, 76 Kan. 70, 90 Pac. 760, cited by the defendant, is not in point, because it cannot be said that the dangers presented were as completely within the knowledge and appreciation of the servant as of the employer. The defendant confuses the situation by ignoring the fact that a duty rested upon it which did not rest upon the plaintiff. His fears were dispelled by the repeated statement of the manager that there was no danger. He was lulled into assurance of safety and security very much in the same way that an employee is lulled by a promise of a master to remedy a defect. We find no error in the instructions given, nor in the refusal to give instructions requested.

Instruction No. 7 charged that the plaintiff assumed the risk and was guilty of contributory negligence in remaining in the building after he knew of the presence of natural gas therein, and that if he continued there after he knew or had reasonable cause to believe that natural gas was escaping into the building, he could not recover; but if he notified the defendant and was advised by the manager that he was mistaken, if plaintiff was not familiar with the construction of the building or location of the gas pipes or the source of its supply and believed the assurances and relied upon them and was lulled into a sense of security, and further, if the danger was not so glaring or apparent that a reasonably prudent man would not have done otherwise, his remaining in the employ of defendant at the place and under the circumstances would not constitute contributory negligence on his part, and he would not thereby assume the risk of injury.

The case of *Railroad Co. v. Mealman,* 78 Kan. 496, 97 Pac. 381, upon which the defendant relies, involved the right of the

employee to continue to use dangerous appliances which he knew were dangerous, pending the performance of a promise to repair. Here, the servant was induced to remain in the master's employment through the master's positive assurance, which the servant believed and relied upon, that no danger existed. He cannot be charged, as a matter of law, with either contributory negligence or with having assumed the risk, merely because, before notifying the master, he had entertained fears as to the possibility of injury by circumstances coming to his own knowledge, where he afterwards relies upon the assurance of the master that such work may be performed in safety, unless, of course, the danger was so obvious that no man of ordinary prudence would incur it. (4 Labatt's Master & Servant, 2d ed., § 1373, and Note under the heading "Assurance of safety by master or vice principal," 23 L. R. A., n. s., 1014.)

The mere fact that in an employee's judgment an act required by the employer is unsafe does not, as a matter of law, render him guilty of negligence in performing it, if the employer assures him that there is no danger. (*McKee v. Tourtellotte*, 167 Mass. 69.)

What has been said applies, also, to instruction No. 8, which states the same rule of law in different language.

Instruction No. 12 related to one defense alleged in the answer, which was that the plaintiff himself was charged with the special duty of looking after the cold-storage room; and there was evidence that he received $5 extra wages for overseeing the room. In general terms, the instruction charged that if it was part of plaintiff's duties to make extensive repairs or to employ experts or plumbers to do the work, or to make an inspection of the building, or to bind the defendant for the expense thereof, then it was his duty to take whatever steps were necessary to discover and prevent damage or injury to defendant by any result growing out of the presence of natural gas in the building. The instruction was really broader than was warranted by the evidence, and it was too favorable to the defendant, because there was no evidence to show that the plaintiff was required or expected to perform any duty respecting repairs, or for the purpose of discovering whether conditions were such as to render the place where he and others worked unsafe or dangerous.

Most of the objections to the instructions given, as well as the complaints concerning the refusal to give certain requested instructions, are predicated upon the mistaken theory that the parties stood upon an equality, and that the plaintiff, because he first detected what he believed was the odor of natural gas in the storage room, became charged with the same responsibility with respect to the consequences of gas actually being there, as did the defendant.

The judgment is affirmed.